IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01289-PAB-KLM

LEISERV, LLC, a Delaware limited liability company,

    Plaintiff,

v.

SUMMIT ENTERTAINMENT CENTERS, LLC, a Colorado limited liability company, and
SUMMIT COMPANIES INCORPORATED, a Colorado corporation,

    Defendants.

---

**ORDER**

---

This matter is before the Court on defendant Summit Entertainment Centers, LLC's Motion for Partial Summary Judgment Regarding Purchase Option [Docket No. 19]. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**[1]

This action arises out of a dispute regarding the ownership and operations of a bowling alley (the "Center") in Colorado Springs. Defendant Summit Entertainment Centers, LLC ("Summit") is the owner of the Center. Docket No. 19 at 2, Statement of Undisputed Material Fact ("SUMF") 1. Summit and Leiserv, Inc. entered into an Operations Services Agreement (the "Agreement"), whose effective date was April 15, 2011. *Id.* at 3, SUMF 2.[2] The Agreement states that disputes about the agreement are

---

[1] The following facts are undisputed unless otherwise indicated.

[2] At some time thereafter, Leiserv, Inc. changed its name to Leiserv, LLC ("Leiserv"). *See id.* at 3, SUMF 3; Docket No. 29 at 3, ¶ 3.

to be governed by Colorado law. *Id*.

The Agreement contains the following purchase option clause:

(c) Service Provider Purchase Option

(i) Upon termination of the Operations Services Agreement for any reason, [Leiserv] shall have the exclusive option to purchase the Center from [Summit] for fair market value. [Summit] and [Leiserv] agree to negotiate fair market value and the purchase price in good faith.

(ii) [Leiserv] must provide written notice within sixty (60) days following termination to [Summit] of its intent to exercise the Purchase Option.

Docket No. 19 at 3, SUMF 5. Subject to certain conditions, the Agreement may be terminated with or without cause. *Id*., SUMF 4; Docket No. 19-1 at 4, ¶ 4(a).

The Agreement also includes a dispute resolution clause that states that "[a]ny dispute arising out of or relating to this Agreement shall be resolved in accordance with the procedures described in this Section, which shall be the sole and exclusive procedures for resolution of any such disputes." Docket No. 19-1 at 7, ¶ 5. The dispute resolution clause requires Leiserv and Summit to "try in good faith to settle the dispute through non-binding mediation." *Id*., ¶ 5(a). If mediation is unsuccessful, the agreement provides the forum and venue for any lawsuit between Leiserv and Summit – either this Court or the District Court for the City and County of Denver, Colorado. *Id*., ¶ 5(b).

Disputes between Leiserv and Summit arose after Leiserv was purchased by Bowlmor AMF Corp. in the summer of 2014. Docket No. 19 at 3-4, SUMFs 3, 8. On March 20, 2015, Leiserv issued a "Notice of Default" to Summit indicating that, pursuant to the terms of the Agreement, Summit had thirty days to cure the default or Leiserv

would terminate the Agreement. *Id.* at 4, SUMF 9. On March 27, 2015, Summit issued a "Notice of Termination for Cause" to Leiserv identifying alleged breaches of the Agreement and referencing Leiserv's contractual duty to cure the alleged breaches within thirty days. *Id.*, SUMF 10.

On or about April 19, 2015, Summit took over operations of the Center. *Id.* at 5, SUMF 12. On June 17, 2015, Leiserv notified Summit of its intent to exercise the purchase option based on an alleged appraised value of $5,100,000. *Id.*, SUMF 13.

On June 18, 2015, Leiserv filed a complaint in this Court alleging three claims for relief: (1) declaratory judgment on the Center's fair market value; (2) breach of contract; and (3) guaranty. Docket No. 1 at 4-7. On July 10, 2015, Summit filed a counterclaim alleging four claims for relief: (1) a declaratory judgment (a) that Summit did not breach the Agreement, (b) that Summit is not liable for the termination fee and that the purchase option has been triggered; (c) that Summit has no liability to Leiserv under the guaranty; (d) that Leiserv breached the Agreement; (e) that the purchase option is unenforceable; (f) that, if the Court determines that the purchase option is enforceable, to determine the fair market value of the Center; (g) that, if the purchase option is enforceable, Leiserv must purchase the Center for fair market value from Summit; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) breach of fiduciary duty. Docket No. 13 at 15-18.

On August 17, 2015, Summit filed the instant motion for summary judgment seeking a determination from the Court that the purchase option is unenforceable as an agreement to agree. Docket No. 19 at 7. Specifically, Summit contends that the Agreement anticipates future negotiations regarding the Center's purchase price and

lacks a methodology to resolve any price dispute, and that Leiserv failed to provide separate consideration for the purchase option. Docket No. 19 at 8, 12. Leiserv responds that the purchase option is supported by adequate consideration and is sufficiently definite to be enforceable because it provides a price–fair market value–as well as the means by which fair market value is to be determined. Docket No. 29 at 7-17.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

Under Colorado law, "[i]nterpretation of a written contract is a question of law for the court." *In re Marriage of Thomason,* 802 P.2d 1189, 1190 (Colo. App. 1990) (citing *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984)). The primary goal of contract construction is to determine and effectuate the intent and reasonable expectations of the parties. *Copper Mountain, Inc. v. Industrial Sys., Inc.,* 208 P.3d 692, 697 (Colo. 2009). Contract language must be examined and construed consistently with the plain and generally accepted meaning of the words employed. *Id.*; *see Pepcol Mfg. Co.,* 687 P.2d at 1313-14 ("In the absence of contrary manifestation of intent in the

contract itself, contractual terms that have a generally prevailing meaning will be interpreted according to that meaning."). "The court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Copper Mountain, Inc.*, 208 P.3d at 697 (internal quotation marks omitted). "Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract." *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997); *see also Pepcol Mfg. Co.*, 687 P.2d at 1314 ("It is axiomatic that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence.").

In Colorado, "[a] contract for the sale of land must be in writing and must contain the names of the parties, the terms and conditions, a description of the interest or property, and the consideration." *Schreck v. T&C Sanderson Farms, Inc.*, 37 P.3d 510, 513 (Colo. App. 2001) (citing Colo. Rev. Stat. § 38-10-108). Summit appears to dispute the terms and conditions (fair market value) and whether the option was supported by consideration.

### A. Whether the Purchase Option is Enforceable

Summit makes two arguments why the purchase option is an unenforceable agreement to agree. Docket No. 19 at 9. First, Summit argues that use of the term "fair market value" is too indefinite. *Id*. Second, Summit contends that the language of the purchase option, namely, that the parties "agree to negotiate" the fair market value, requires precisely that – the price must be determined through subsequent negotiations of the parties. *Id*. The purchase option states that, "[Summit] and [Leiserv] agree to

*negotiate* fair market value and the purchase price in good faith" (emphasis added). *Id*. at 3, SUMF 5.

When interpreting a contract, "[t]he court's goal is to give effect to the parties' intention as of the time the contract was made." *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769, 779 (Colo. 1985). The plain language of the Agreement indicates that the parties intended that Leiserv would have the right to purchase the Center for fair market value. *See* Docket No. 19-1 at 5, ¶ 4(c) ("Upon termination of the Operations Services Agreement for any reason, [Leiserv] shall have the exclusive option to purchase the Center from [Summit] for fair market value.").

"'Fair market value' is a well-established means of property valuation and is a common task performed by courts on a daily basis." *Goodwest Rubber Corp. v. Munoz*, 170 Cal. App. 3d 919, 921 (Cal. App. 1985); *see also Allred v. Lininger*, 156 Colo. 341, 345 (Colo. 1965) ("In the absence of an agreed price, it is a general rule that the court is required to determine the price on the basis of the reasonable value of the house. . . . Under general principles of contract, the "reasonable value" rule is universally applied where no contract price can be determined.") (internal citations omitted). In *Goodwest Rubber Corp.,* 170 Cal. App. at 921, the court found that "[s]pecifying 'fair market value' as the price to be paid when exercising the option to purchase does not require future agreement of the buyer and seller."

Summit does not cite any Colorado cases holding that use of the term "fair market value" to describe the purchase price renders a contract unenforceable. Summit relies on two cases applying Tennessee law that found that fair market value

was too indefinite. *See Four Eights, LLC v. Salem*, 194 S.W.3d 484 (Tenn. Ct. App. 2005), and *Universal Props, Inc. v. Regions Bank*, 2012 WL 4360770 (E.D. Tenn. Sept. 21, 2012). Docket No. 19 at 9-10. The *Four Eights* decision contains no indication of whether the agreement there provided for a dispute resolution process, and thus is not analogous to the circumstances of the instant case. In *Universal Props*, the court found the absence of a definite dispute resolution process as persuasive in its decision to deny the party's motion for summary judgment that the purchase option was enforceable. 2012 WL 4360770, at *7. Thus, contrary to Summit's argument, *Universal Props* supports the enforceability of the purchase option in the Agreement in light of its dispute resolution provisions. *See also Am. Nat'l Prop. and Cas. Co. v. United Specialty Ins. Co.*, 592 F. App'x 730, 739-40 (10th Cir. 2014) (unpublished) ("Where price terms referring to fair market value have been regarded as indefinite, it has been because the *methodology* used to determine fair market value was uncertain.") (emphasis in original) (citations omitted). The Court finds that the weight of authority supports the proposition that a contract term based on fair market value does not render an agreement unenforceable where the parties agree to a methodology by which fair market value is to be determined. Therefore, the parties' use of the term "fair market value" is not too indefinite to render the purchase option unenforceable.

Summit also argues that the option is unenforceable because it contemplates future negotiations and is premised on agreement between the parties. Docket No. 19 at 9. While "[a]greements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement," *DiFrancesco v. Particle*

*Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001) (citing *Griffin v. Griffin*, 699 P.2d 407 (Colo. 1985)), contracts are to be read and interpreted as a whole. *Copper Mountain, Inc.*, 208 P.3d at 697. Here, the Agreement identifies a dispute resolution process. Docket No. 19-1 at 7. If the parties have a dispute about the Agreement, it must be resolved through the procedures identified in Section 5 of the Agreement. First, "[Leiserv] and [Summit] shall try in good faith to settle the dispute through non-binding mediation." *Id*. If the parties cannot resolve the dispute through mediation, "any action between [Leiserv] and [Summit] . . . shall be brought only in the U.S. District Court for the [District] of Colorado, or the District Court for the City and County of Denver, Colorado." *Id*.

Summit contends that the dispute resolution provision does not apply to the purchase option because it is not "geared toward determination of the Center's fair market value." Docket No. 19 at 9 n.3. This argument is unpersuasive. The dispute resolution provision is not specific to any given type of dispute and there is no reason why it would be insufficient to resolve a dispute over the fair market value of the Center. Moreover, the language of the dispute resolution clause suggests that it does apply to the purchase option. Section 5 applies to "[a]ny dispute" arising under the Agreement and provides the "sole and exclusive procedures" to resolve such a dispute. Docket No. 19-1 at 7. Here, the dispute is the fair market value of the Center for purposes of the purchase option in the Agreement, which is a dispute "arising out of or relating to" the Agreement. *See id*.

As authority for its position that an option agreement is unenforceable if it

contemplates future negotiations, Summit cites *Village of Rockton v. Rock Energy Coop.*, 2011 WL 10418590 (Ill. App. 2011), *Carr Office Park, LLC v. Charles Schwab & Co., Inc.*, 291 F. App'x 178 (10th Cir. 2008) (applying Colorado law), and *American Mining Company v. Himrod-Kimball Mines Company*, 124 Colo. 186 (Colo. 1951). Docket No. 30 at 6; Docket No. 19 at 8.  In *Village of Rockton*, the option stated that the purchase price was to be "determined by good faith, arms-length negotiation to ascertain the fair market value of the local utility assets, taking into consideration the future business and growth prospects of the local utility operations." 2011 WL 10418590, at *2.  The court found that, "[a]lthough the price provision does reference fair market value, the provision, taken in its entirety, makes clear that the parties intended to engage in future negotiations to reach an agreed-upon price, and not to rely upon an objective evaluation of the fair market value of the utility assets." *Id*.  There was no mention in *Village of Rockton* of a dispute resolution clause, which distinguishes *Village of Rockton* from the option in this case.  In *Carr Office Park*, the parties were unable to agree on the lease of an office garage.  291 F. App'x at 179.  The parties signed an agreement that they "shall, in good faith, negotiate and finalize a lease document." *Id*. at 180.  The Court noted that, under Colorado law, "[t]o create an enforceable and binding contract, all essential elements must be settled or a method of settlement must be agreed upon." *Id*. at 182.  In determining that the agreement was unenforceable, the Court noted that the agreement "did not designate lease terms to be used in the event of a failure to reach an accord on a new lease." *Id*.  *Carr Office Park* is thus distinguishable because the Agreement here provides the method by which fair

market value is to be determined. *American Mining Company* is distinguishable because it involved an instrument that was unenforceable and incomplete on its face. The court found that no complete agreement had ever been reached "considering that the instrument upon which the suit was brought was unilateral; its brevity, in view of the subject matter involved; its evident incompleteness; and all facts and circumstances surrounding the particular transaction." 235 P.2d at 808. The Court finds that *Village of Rockton*, *American Mining Company*, and *Carr Office Park* do not support Summit's position that the option agreement required the parties to negotiate the fair market value of the Center.

Summit also argues that, "[a]part from the price, other critical elements of a purchase and sale were not addressed, let alone agreed upon, in the Purchase Option." Docket No. 19 at 10. Summit then observes that "[t]he sale of an operating business, along with the associated real and personal property, is a complex endeavor with many details and contingencies that would typically take significant time to negotiate." *Id*. at 11. While some of these contentions may be true, it is unclear why a lack of resolution on certain details of a transaction should have the effect of rendering the purchase option itself unenforceable. If this were true, few purchase options would ever be enforceable unless they appended the contract of sale. Accordingly, the Court finds that the purchase option is not an unenforceable agreement to agree.[3]

---

[3]Summit cites statements of Leiserv in Denver District Court suggesting that Leiserv would not regard a court determination of the fair market value as binding it to complete the purchase at that price. Docket No. 30 at 2; Docket No. 30-2 at 2. Leiserv does not disavow that contention in its response, but does claim to have exercised the purchase option, Docket No. 29 at 2 n.1, which is inconsistent with it merely asking the Court to identify an offer price. *See Shull v. Sexton*, 390 P.2d 313, 316 (Colo. 1964)

### B. Absence of Consideration for Purchase Option

Summit argues that the purchase option is unenforceable because no separate consideration was given for the purchase option. Docket No. 19 at 12. Leiserv responds that the "cases cited by Summit do not stand for the proposition that an option must be supported by consideration separate from the consideration for the underlying contract; rather the separate consideration the cases refer to is that given for the purchase of the property, e.g., the purchaser cannot use the consideration given for the option as the consideration for the purchase of the property." Docket No. 29 at 17.

The Court agrees with Leiserv. Summit conflates consideration for exercising the option – in this case, the fair market value of the Center – with consideration for the purchase option provided in the Agreement. Summit concedes that the Agreement itself was supported by consideration. Docket No. 19 at 16. The Agreement delineates the compensation Summit is to pay Leiserv, Docket No. 19-1 at 1, and the services Leiserv is to provide. *Id*. at 22-25. The purchase option is supported by, and is a component of, the consideration for the Agreement. Accordingly, the Court finds that the purchase option contained in the Agreement is not unenforceable for lack of consideration.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Summit Entertainment Centers, LLC's Motion for

---

("Upon exercise of plaintiffs' option to purchase . . ., the agreement ceased to be an option and ripened into a mutually binding and mutually enforceable contract.") (citation omitted). Any determination of the fair market value by the Court will bind Leiserv.

Partial Summary Judgment Regarding Purchase Option [Docket No. 19] is **DENIED**.

DATED March 16, 2016.

                                  BY THE COURT:

                                  s/Philip A. Brimmer
                                  PHILIP A. BRIMMER
                                  United States District Judge